UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TANYQUA LATRICE OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-CV-100-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD J. TRUMP, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court to address Plaintiff Tanyqua Oliver's "Motion to Recuse or Divest," *see* [R. 31], as well as the status of service of process upon the defendant. For the reasons explained below, the Court will deny Oliver's motion to recuse. Further, in light of Oliver's persistent failure or refusal to comply with the Federal Rules of Civil Procedure, the Court will dismiss this action without prejudice for failure to prosecute.

**I.**

At the outset, the Court notes that on June 25, 2025, Oliver filed an "Emergency Petition for a Writ of Prohibition" in the Sixth Circuit. *See in re: Tanyqua Oliver*, No. 25-5597 (6th Cir. 2025), [R. 1 *therein*]. In her petition, Oliver sought an order from the Sixth Circuit prohibiting this Court from dismissing her complaint based solely upon her failure to provide a valid residential address as required by prior Order of this Court. *See id.* [R. 1, p. 2 *therein*]. Parenthetically, the June 25, 2025, deadline for Oliver to comply with this Court's Order has long passed without compliance. *See* [R. 28, p. 1]. As of this writing, the Sixth Circuit has taken no action on Oliver's petition. A text entry in the docket of that proceeding notes only that Oliver's

- 1 -

contemporaneously filed "Emergency Motion to Defer Filing Fee," *see in re: Tanyqua Oliver*, No. 25-5597 [R. 3 *therein*], was not filed on the correct form and was not accompanied by an affidavit.

The filing of a petition for a writ of prohibition does not divest this Court of jurisdiction to proceed. *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022) (citing *Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) ("[P]etitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case.")); *Nwanguma v. Trump*, No. 3:16-CV-247-DJH-HBB, 2017 WL 3430514, at *2 n.2 (W.D. Ky. Aug. 9, 2017)); *see also Farrell v. US Bank Nat'l Ass'n*, No. 14-11781, 2015 WL 13035017, at *1 n.1 (E.D. Mich. Jan. 15, 2015) (observing that "the filing of a petition for a writ of mandamus [in the court of appeals] does not divest [the] district court of jurisdiction, nor does its pendency have the effect of staying proceedings in the district court" (quoting *Hubbard v. Midland Credit Mgmt., Inc.*, No. 1:05-CV-0216-DFH-TAB, 2009 WL 2148131, at *1 (S.D. Ind. July 16, 2009)). The Court may therefore proceed to address any and all matters before it.

## II.

Second, an administrative matter. When Oliver filed her initial notice in June indicating that her address had changed, she provided a Post Office Box in Cincinnati, Ohio, with a zip code of 45203. *See* [R. 22, p. 1]. That is the address listed in the Court's docket, both then and now. On June 12, 2025, the Court entered an Order directing Oliver to provide a street address in addition to her mailing address. *See* [R. 23]. Three weeks later, on July 3, 2025, that Order was returned as undeliverable by the Postal Service, stating "Insufficient Address. Unable to Forward." *See* [R. 32, p. 1].

Subsequent filings by Oliver provide the same P.O. Box number for her address but with a different zip code, namely 45205. *See* [R. 24, p. 1]; [R. 25, p. 8]; [R. 26, p. 2]; [R. 27, p. 2];

[R. 31, p. 7]; [R. 33, pp. 5–6]; [R. 35, pp. 9, 11]. Oliver also used that address in her recent filings in the Sixth Circuit. *See* [R. 30-1, p. 1]. While the Court's first Order was returned as undeliverable, subsequent Orders have not been, even though they were mailed using the zip code Oliver originally provided. Notably, while the first Order, *see* [R. 23], was not delivered to Oliver, *see* [R. 32], she apparently became aware of it and promptly responded to it within six calendar days. *See* [R. 24]. Likewise, Oliver also promptly responded to two other orders mailed to the same, ostensibly incorrect, mailing address, *see* [R. 28];[R. 29], within five days. *See* [R. 31]. Although not entirely clear, the foregoing suggests that Oliver is receiving the Court's Orders notwithstanding the erroneous zip code, or perhaps that she may be keeping abreast of proceedings in the case by other means, such as by checking the docket online through PACER or by visiting the kiosk available at the courthouse.

The Court notes this matter for two reasons. First it establishes that, one way or another, Oliver has received the Court's recent order to respond regarding her residential address. *See* [R. 28]. Second, Oliver has used two slightly different mailing addresses, only one of which is correct. Independent of her continuing obligation to provide a valid residential address, Oliver is encouraged to file (in both this Court and in the Sixth Circuit) a notice clarifying her correct address in order to ensure that she receives correspondence from the Court.

### III.

In her motion to recuse,[1] Oliver contends that two orders entered by the Court on June 20, 2025, "exhibit the alleged bias and prejudice against the plaintiff." *See* [R. 31, p. 1]. In one of the

---

[1] At times in her motion, Oliver states that she does not wish the undersigned to recuse from this case but only to become unbiased. *See* [R. 31, p. 2 ("[T]he plaintiff is not interested in a new judge being assigned at all, the plaintiff only demands an unbiased decision maker and finds the Honorable Judge Claria Horn Boom to be thorough and capable but clearly out of touch with reality.")]. Still, given the styling of her motion, and because disqualification is the only form relief actually permitted by the statutes she references, the Court treats Oliver's motion as one requesting recusal of the undersigned.

orders, the undersigned denied Oliver's motion to revisit the Court's prior determinations denying her numerous requests for *ex parte* injunctive relief and denying her request for an in-court hearing regarding judicial notice. *See* [R. 29]. In her motion to recuse, Oliver contends that the Court's denial of her motions to reconsider was "based on Judicial whim stemming from bias and prejudice for the defendant rather than judicial discretion. . . ." *See* [R. 31, p. 4]. In the other order, the Court directed Oliver to provide a residential address with the Court as required by Local Rule 5.3. *See* [R. 28]. In her motion to recuse, Oliver argues that the Court's requirement that she provide a valid residential address is based upon some unidentified assumption regarding the plaintiff and/or her housing status. *See* [R. 31, p. 2].[2]

As grounds for recusal, Oliver invokes both 28 U.S.C. § 144 and 28 U.S.C. § 455.[3] *See* [R. 31, p. 1]. The first statute provides that a judge shall recuse if a party files a timely and sufficient affidavit[4] which establishes that the judge has a personal bias or prejudice against her or

---

[2] Elsewhere in her motion, Oliver states that after the undersigned was appointed to the federal bench, she was sued by a party who was represented by Frost Brown Todd, a law firm with which the undersigned was previously associated. Oliver offers conflicting indications regarding whether she seeks recusal on this ground. *See* [R. 31, pp. 4–5]. The undersigned has reviewed the circumstances requiring disqualification under 28 U.S.C. § 455(b), as well as the Code of Conduct for United States Judges, contained in Chapter Two of the Guide to Judiciary Policy, with particular focus on Canon 3(C)(1)(a), (b). While Oliver provides only sparse details regarding the prior matter in question, the undersigned is unaware of the representation described and took no part in it. The undersigned is of the opinion that the circumstances described by Oliver do not warrant or require disqualification under § 455 or the Code of Conduct.

[3] Under the latter statute, Oliver states that she moves the undersigned "to divest herself of the inscribed interest in this affidavit per 28 USC (sic) [§] 455 (f)." [R. 34, p. 1]. The referenced subsection provides that if, "after substantial judicial time has been devoted to the matter," a presiding judge discovers she "would be disqualified" because she "has a financial interest in a party," then "disqualification is not required if the [ ] judge . . . divests [ ] herself of the interest that provides the grounds for the disqualification." 28 U.S.C. § 455(f). This provision is inapplicable to Oliver's allegation of bias. Neither the undersigned nor any related person identified in the statute has any "financial interest in a party," nor does Oliver assert that this is so. Instead, Oliver appears to conflate an alleged bias against her with a financial interest. That is plainly incorrect. *See* 28 U.S.C. § 455(d)(4) (defining "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party. . . ."). The undersigned therefore construes Oliver's § 455 request as seeking disqualification on grounds of alleged bias under § 455(b)(1).

[4] Oliver did not file the affidavit required by § 144, but the Court disregards the omission.

in favor of an adverse party. 28 U.S.C. § 144. The second provides for recusal where the judge has an interest in or knowledge of the subject matter of the claim which would cause an objective observer to question her impartiality. 28 U.S.C. § 455; *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 717–19 (7th Cir. 2004). However, because a judge is obligated to preside over cases to which she is assigned, a judge should not "recuse [ ] lightly." *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000).

Oliver does not suggest (nor would there be any factual basis to do so) that the undersigned possesses "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Instead, she complains of bias. *See* [R. 31, p. 1]. In this context, the words "bias or prejudice" refer to "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994) (emphasis in original); *see also Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006) (quoting *Liteky*, 510 U.S. at 550).

Here, the Court's rulings on Oliver's motions in this case have been based upon the allegations of Oliver's original and first amended complaints, as well as her motions for injunctive relief in this matter, and application of well-settled principles of law to those claims. Oliver's allegation of bias regarding the Court's denial of her motions to reconsider is based upon her dissatisfaction with the adverse rulings of the Court. It is well established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555; *see also Williams*, 460 F.3d at 815 (quoting *Liteky*, 510 U.S. at 555). Oliver's disagreement with the Court's rulings therefore do not provide a viable foundation for a motion to recuse. *See United States v. Campbell*,

59 F. App'x 50, 52 (6th Cir. 2003) (noting that prior adverse rulings by a judge "will almost never serve as a valid basis for recusal and are most often simply grounds for appeal" (citing *Liteky*, 510 U.S. at 555)).

Oliver also alleges that the Court's Order requiring her to file a notice updating her residential address is indicative of bias because she is homeless. *See* [R. 31, pp. 2–3, 5–6]. Oliver also contends that bias is evidenced by the five-day time period to respond. *See id.* at 3.

Determining whether bias exists is "not based on the subjective view of a party," *Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016) (citation omitted). Instead an objective standard is applied, requiring a judge to recuse himself only "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990) (citations omitted). The objective standard asks "whether an ordinary citizen advised of the assertions of historical fact, and disregarding the assertions of inferences and conclusions, would reasonably believe the judge to whom the case has been assigned in regular course to be biased or prejudiced against the party making the request for an order that the case be transferred to another judge." *Mandel v. Town of Orleans*, 233 F. Supp. 2d 147, 150 (D. Mass. 2002); *In re M. Ibrahim Khan, P.S.C.*, 751 F.2d 162, 164 (6th Cir. 1984) ("[A] judge should disqualify himself only if there is reasonable factual basis for doubting his impartiality." (citations omitted)).

Assessed under these standards, recusal is unwarranted. At the outset of the case, Oliver provided a residential address in her complaint. *See* [R. 1, p. 11]. She used the same residential address in her motion to proceed *in forma pauperis*, also disclosing not-insubstantial monthly income and assets. *See* [R. 5, pp. 1–3]. Notwithstanding the fact that she claimed nearly $2,000 per month in living expenses, Oliver asserted that she was homeless. *See id.* at 4–5. Oliver

confused matters further when, in the same fee motion, she responded to a question directing her to provide "the address of your legal residence," by stating that she was "homeless but may be at 750 Newtown Ct." *See id*. The quoted address is different from the one she provided earlier in that motion and in her complaint. When deciding her fee motion, the Court addressed the evident ambiguity in Oliver's self-described living situation, stating:

> Oliver states that she is "homeless," but indicates that she "maybe be at" a street address which, a search reveals, is occupied by a hotel. *See* [R. 5, p. 6]. That explains her considerable housing costs.
>
> Oliver provided a mailing address which is, in fact, a Post Office Box. *See* [R. 5, p. 1]. The Court's Local Rules require pro se litigants to provide a street address where they reside. *Cf*. LR 5.3(e). However, given the possibility that Oliver would be unable to receive mail at the hotel, the Court will not enforce that rule here.

*See* [R. 8, p. 3 n.1]. Thus, at the outset of this case the Court made clear, as it has done in other *pro se* cases, that it does not strictly enforce the requirements of LR 5.3(d) and (e), where the *pro se* litigant is homeless (*i.e.*, does not have a residential address at all), or is incapable of receiving mail at the place where they reside (*i.e.*, a community center, halfway house, or in this case, a hotel). The Clerk therefore continued to mail Orders to Oliver at the address she initially provided, a Post Office Box in Lexington, Kentucky.

Oliver filed her notice of change of address on June 10, 2025. *See* [R. 22]. Oliver provided only a new Post Office Box in Cincinnati, Ohio. *See id.* at 1. She did not provide any other address or contextual information, and she did not state that she was homeless. *See id*. Two days later the Court entered an Order reminding Oliver of the Court's Local Rules and her obligation to provide a residential address, and directed her to update her mailing address to include her residential address by June 23, 2025. *See* [R. 23, p. 1].

Oliver filed her one-page response six days later, which stated in its entirety:

    I.       The plaintiff does not have a residential address.

> II. The plaintiff shall immediately update the courts of any changes to her phone, email, mailing or residential address.

[R. 24, p. 1]. Oliver's response again did not provide any other information, and she did not state or suggest that she was homeless. *See id.* On June 20, 2025, the Court entered an Order noting Oliver's indescript response, stating:

> The Court assumes Oliver lives *somewhere*. It need not be a long-term residence so long as she keeps the Court apprised of any changes to her residence pursuant to her obligation under Local Rule 5.3. Oliver must therefore comply with the Court's prior Order by updating her address with the Clerk providing the address where she actually lives.

[R 28, p. 1 (emphasis in original)]. The Court ordered Oliver to update her address within five days. *See id.* Oliver did not respond within the time permitted. Instead, within four days, Oliver had filed in the Sixth Circuit a nine-page petition for a writ of prohibition, supported by citations to legal authority and thirty pages of exhibits, and a three-page motion to defer payment of the filing fee. *See in re: Tanyqua Oliver*, No. 25-5597 [R. 1 *therein*]; [R. 3 *therein*]. And one day later, Oliver also filed her six-page motion to recuse, which includes legal argument and citation to relevant authority. *See* [R. 31].

The foregoing undermines the grounds asserted by Oliver for recusal. First, in her motion to recuse, Oliver states that "the plaintiff is homeless *and had disclosed her homelessness*. . . ." *See id.* at 5 (emphasis added). That is incorrect: Oliver did not state or suggest that she was homeless until she filed her motion to recuse. Rather, at the outset of the case, Oliver had asserted that she was "homeless" but indicated that she was incurring substantial housing costs while perhaps staying at a hotel in Lexington, *see* [R. 5, p. 4–5], a conclusion that Oliver never objected to nor stated was incorrect. Her subsequent statement in June 2025 that she did "not have a residential address" suggested at most that she had relocated to Cincinnati and was perhaps staying

- 8 -

at a hotel nearby. [R. 24, p. 1]. Indeed, Oliver had foreshadowed such a possibility in her fee motion. *See* [R. 5, p. 5].

And as noted above, the Court does not insist that a *pro se* litigant provide a residential address if they do not have one. But, as it did in this case, it will insist that a plaintiff provide a clear and sufficient factual basis to establish that compliance with LR 5.3 should be excused. The Court does so not out of a needless formality, but to ensure that it can communicate with the parties. Further, knowing where a *pro se* party resides helps the Court to ensure that the case has been filed in the proper district and division, and in certain instances, that it possesses diversity jurisdiction to hear the case.

Finally, the period established by the Court for Oliver to file her response was not the product of bias, nor was it unreasonable. The simple task of completing a brief notice of change of address and filing it with the Court requires little time. Notably, throughout this case Oliver has often responded to the Court's Orders by filing new motions within a matter of days. *See* [R. 9 (one day)]; [R. 16 (five days)]; [R. 21 (eight days)]; [R. 24 (six days).] And as noted above, within the five day period permitted, Oliver drafted and filed a thorough petition in the Sixth Circuit and her motion to recuse in this case. For each of these reasons, Oliver's assertion of bias is unfounded. The undersigned will therefore deny her motion to recuse.

**IV.**

Oliver filed her complaint in this action on April 1, 2025. *See* [R. 1]. The Federal Rules of Civil Procedure required Oliver to effect valid service of process upon the defendant within 90 days. *See* Fed. R. Civ. P. 4(m). That deadline fell on June 30, 2025.

Oliver did not immediately obtain summons from the Clerks Office to effect service upon case commencement, but did so when she filed her first amended complaint less than one week

later. *See* [R. 12]. Oliver later stated that she tried to serve President Trump by sending a copy of her amended complaint and a summons form—the two documents mailed separately and on different dates—to the White House by United States Postal Service ("USPS") Priority Mail, as well as to three varied e-mail addresses. *See* [R. 14, pp. 1–2]. Without deciding the validity of those steps to serve process, in a May 1, 2025, Order the Court noted that it harbored "serious doubts about the sufficiency and efficacy of those efforts[.]" *See* [R. 15, p. 2]. The Court makes plain now what it foreshadowed then: mailing service documents by USPS Priority Mail is not a valid means for serving a federal official, whether sued in his or her individual or official capacity. *See* Fed. R. Civ. P. 4(e)(1)–(2), 4(i)(1)–(3). And "[a] summons must be served *with* a copy of the complaint"; the two documents may not be served separately from one another. *See* Fed. R. Civ. P. 4(c)(1) (emphasis added). As the Court later noted, Oliver's attempts at service were also improper because she mailed them herself. *See* [R. 18, p. 3]; Fed. R. Civ. P. 4(c)(2).

In the months following, Oliver continued to send President Trump copies of her numerous filings by various means, each time asserting that he had been validly served with process. *Cf.* [R. 16, pp. 2–4]; [R. 17, p. 2]; [R. 19, p. 4]. However, the Court has explained that those efforts, doubtless undertaken by Oliver with earnest good faith, did not comply with the requirements of the Federal Rules of Civil Procedure. *Cf.* [R. 18]; [R. 20, p. 2].

Oliver's most recent efforts appear in conjunction with her June 25, 2025, motion to file a second amended complaint. *See* [R. 25]. In that motion, as well as in the tendered second amended complaint, *see* [R. 26], and in a contemporaneously-filed motion for injunctive relief, *see* [R. 27], Oliver certified that she sent these documents by USPS mail, by "verified email," or by hand

delivery,[5] to (a) private attorneys for Mr. Trump; (b) government attorneys working for the Department of Justice; (c) a public affairs specialist for the United States Attorney for the Eastern District of Kentucky; (d) the United States Attorney for the District of Columbia; and (e) the Attorney General for the District of Columbia. *See* [R. 25, pp. 8–9]; [R. 26, pp. 24–25]; [R. 27, pp. 24–25]. More than one month later, Oliver filed an affidavit of service, executed by a third party, stating that on or before July 21, 2025, he sent "a copy of the summons and second amended complaint" (1) by e-mail to the five categories of persons listed above; (2) by certified mail directed to President Trump at the White House; and (3) by certified mail to a particular Assistant United States Attorney at an address in Forth Mitchell, Kentucky. *See* [R. 34, pp. 1–7].

The Court has already explained that Oliver's efforts in April 2025 to serve the defendant with her first amended complaint, *see* [R. 14], were ineffective to accomplish to proper service. *See* [R. 15, p. 3]; [R. 18, pp. 2–3]. Later, in its June 2, 2025, Order, the Court referenced a prominent case pending in Boston, Massachusetts, raising claims similar to those asserted by Oliver here, as providing an exemplar of how service upon President Trump could be properly effected. *See* [R. 20, pp. 1–2 (*citing New York v. McMahon*, No. 1:25-CV-10601-MJJ (D. Mass. 2025) [R. 7 *therein*]; [R. 35 *therein*])]. Oliver still failed to properly and timely serve the defendant.

The same holds true for Oliver's efforts to serve her second amended complaint. First and foremost, when Oliver sent those documents, the Court had not granted her motion to amend her complaint, nor has it done so since. Thus, her recent service efforts, which involved sending "a copy of the summons and *second* amended complaint," *see* [R. 34, p. 1 (emphasis added)], did not

---

[5] Through her use of the disjunctive "or," Oliver did not consistently or clearly indicate *which* method of service she used for each recipient. In some instances, she also did not clearly state the street address to which she sent copies by mail.

- 11 -

include sending the operative pleading in this matter, which is Oliver's first amended complaint. *See* [R. 10]. The mailings were therefore ineffective. *See* Fed. R. Civ. P. 4(c)(1). Second, Oliver's efforts came well after the June 30, 2025 deadline to effect service had already passed.

Third, while Oliver referenced some of the applicable service provisions in Federal Rule 4, her efforts were nonetheless wide of the mark in several respects. Oliver sent copies of the summons and second amended complaint by e-mail to private and government attorneys who had previously represented Mr. Trump. But e-mail is not an effective means of service of process. *Cf. Thul v. Haaland*, No. 22-5440, 2023 WL 6470733, at *2–3 (6th Cir. Mar. 1, 2023), *cert. denied*, 144 S. Ct. 96 (2023); *Boomer v. Seller*, No. 5:24-CV-00019-BJB-LLK, 2024 WL 2877180, at *2–4 (W.D. Ky. May 20, 2024), *report and recommendation adopted sub nom. Boomer v. Sellers*, 2024 WL 4246688 (W.D. Ky. Aug. 9, 2024). Further, a "defendant's attorney is not deemed an agent appointed to receive service of process absent a factual basis for believing that such an appointment by the defendant has occurred." *Sutton v. Penny Mac Loan Servs., LLC*, No. 2:23-CV-00064, 2025 WL 1903660, at *3 (M.D. Tenn. July 9, 2025) (*quoting Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002)); *see also Keyes v. Edison Banks*, No. 7:18-CV-23-KKC, 2019 WL 13242653, at *1 (E.D. Ky. Jan. 3, 2019) ("But an attorney who represents a party in a case does not thereby become his or her agent to receive service of process even in that case itself, let alone any other case." (*citing United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) ("The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service. Even where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service." (citations omitted)))). Oliver did not, by sending e-mails to former attorneys, effect valid service.

Fourth, to serve Mr. Trump in either his individual or official capacity, Oliver was required to serve the United States. *See* Fed. R. Civ. P. 4(i)(2)–(i)(3). And service upon the United States requires service upon the Attorney General of the United States. *See* Fed. R. Civ. P. 4(i)(1)(B). Oliver claims that she satisfied this obligation by sending service documents by e-mail to USADC.ServiceCivil@usdoj.gov and OAGServiceofProcess@dc.gov. *See* [R. 34, p. 2]. As noted above, service by e-mail is not permitted by either federal law or District of Columbia law. Even if it were, neither e-mail address is directed to the Attorney General of the United States. The first address is for the United States Attorney for the District of Columbia. That is plainly the wrong entity. As that office explains:

> The U.S. Attorney's Office is not authorized to accept service on behalf of the Attorney General or other federal agencies, corporations, officers, or employees. Thus, if an applicable rule requires any such entities and persons to be served, they must be served separately and in addition to service upon the U.S. Attorney's Office.

*See* U.S. ATTY'S OFF., https://www.justice.gov/usao-dc/civil-division (last visited August 12, 2025). The second e-mail address is for the Attorney General for the District of Columbia. Again, that e-mail address is for the wrong entity. Oliver therefore failed to properly serve the United States. That failure, in turn, rendered service upon President Trump incomplete and therefore invalid. *See Castronuova v. Meta Platforms, Inc.*, No. 23-CV-7511(KAM)(AYS), 2024 WL 1623274, at *7 (E.D.N.Y. Apr. 15, 2024) (dismissing complaint against President Joseph R. Biden, Jr., for failure to effect service and noting that, "[b]ecause Plaintiff failed to serve the Attorney General, she failed to properly serve the United States officials named as Defendants, as required for both of the federal Defendants").

Finally, Oliver sent her proposed second amended complaint and summons to the United States Attorney's Office for the Eastern District of Kentucky by sending e-mails to two persons,

neither of whom serves as a civil process clerk for that office. *See* [R. 34, p. 2]. She also sent her documents by certified mail, albeit to the wrong office and directed to the wrong person. *See id*. Oliver therefore failed to properly serve the local United States Attorney as required by Rule 4(i)(1)(A)(ii). *Cf. McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) ("Although McMasters mailed a copy of the summons and complaint to the Attorney General in accordance with Rule 4(i)(1)(B), at no point did she ever serve the U.S. Attorney. This failure renders improper the service of the United States." (*citing Tuke v. United States*, 76 F.3d 155, 157 (7th Cir. 1996))). In any event, and as noted above, all of Oliver's mailings in July 2025 were insufficient because she did not mail the operative pleading in this case—the first amended complaint, *see* [R. 10]—but instead her proposed second amended complaint.

Oliver having failed to timely serve process upon the defendant, the Court next considers whether she is entitled to an extension of time to do so. There are two circumstances where an extension of time is mandatory:

> The court must allow a party a reasonable time to cure its failure to:
>
> (A)  serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or
>
> (B)  serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

Fed. R. Civ. P. 4(i)(4). Neither provision applies here. As noted above, Oliver sent her first amended complaint only to the White House, by USPS Priority Mail, which she mailed herself. *See* [R. 14, pp. 1–2]. She therefore did not and has not properly served her pleading upon President Trump, the local United States Attorney, or the United States Attorney General. Rule 4(i)(4) therefore does not require an extension of time to effect service.

The civil rules separately provide that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  The Rule actually provides for two varieties of discretionary time extension:

> the text of Rule 4(m) makes additional time to serve process mandatory if the plaintiff can show good cause for the failure to timely effect service. And even if he cannot, the Court still has discretion to extend the deadline for service.

*Murray v. Jones*, No. 6:20-CV-00082-GFVT, 2022 WL 821662, at *2 (E.D. Ky. Mar. 17, 2022) (*citing Stapleton v. Vicente*, No. 5:18-CV-504-JMH-MAS, 2021 WL 1234636, at *2 (E.D. Ky. Mar. 31, 2021)).

The "good cause" standard means at least "excusable neglect." *Turner v. City of Taylor*, 412 F. 3d 629, 650 (6th Cir. 2005) (citing Fed. R. Civ. P. 4(m)).  The Sixth Circuit has made clear that "[t]he excusable neglect standard has consistently been held to be strict, and can be met only in extraordinary cases." *Id.* (*quoting Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)).  To constitute neglect, the plaintiff's "failure to do something [must have] occurred because of a simple, faultless omission to act, or because of a party's carelessness." *See id.* (citations omitted). Here, Oliver did not fail to act: she repeatedly failed to follow the applicable legal rules despite receiving some guidance from this Court on proper methods of service and several cautions about the anticipated dismissal of her complaint if she failed to serve the defendant.  *See* [R. 15, pp. 2–3]; [R. 18, pp. 2–3]; [R. 20, p. 2].

Even if the failure to serve the defendant could be characterized as neglect, "the [plaintiff] must establish that the failure to act was excusable." *Turner*, 412 F.3d at 650.  To decide whether an omission was "excusable," the Court may consider whether the party acted in good faith; the

- 15 -

reason for the omission, including whether it was within the reasonable control of the party; the length of delay and its impact on judicial proceedings; and any prejudice to other parties. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Here, Oliver was cautioned—early in the case and repeatedly—that she had not properly served her complaint and that her case would be dismissed if she did not effect valid service by June 30, 2025. Despite those admonitions Oliver did not, and has still not, properly served her complaint.

The law is clear that "'lack of prejudice and actual notice are insufficient' [to establish good cause], as are 'mistake of counsel or ignorance of the rules.'" *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021) (citation omitted). The Sixth Circuit has held that good cause under Rule 4(m) is generally found only where "something outside the plaintiff's control prevents timely service." *Savoie v. City of East Lansing*, No. 21-2684, 2022 WL 3643339, at *4 (6th Cir. Aug. 24, 2022). A non-exclusive list of scenarios that might warrant a finding of good cause include: "(1) when the defendant has intentionally evaded service; (2) when the district court has committed an error; and (3) when a pro se plaintiff suffers from a serious illness." *Thul*, 2023 WL 6470733, at *2 (citing *Savoie*, 2022 WL 3643339, at *4). Those kinds of circumstances are not present here. Instead, the plaintiff has repeatedly demanded that the Court grant injunctive relief without affording the President the opportunity to be heard or respond. Her repeated failure to serve Mr. Trump with process therefore does not appear to be the product of circumstances outside of her control, but rather a means of obtaining the desired consideration of her claims *ex parte*.

Of course, the Court is mindful that Oliver is proceeding without counsel. But she is still required, as is every litigant, to follow applicable procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")

(footnote omitted)); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("We are cognizant of the unique challenges facing pro se litigants and are generally disposed toward providing a litigant the benefit of appellate review. But we must also insist on compliance with procedural rules such as Rule 28 to promote our interest in the uniform administration of justice." (citation omitted)). The Supreme Court has emphasized that:

> District judges have no obligation to act as counsel or paralegal to *pro se* litigants. . . . [Moreover,] "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure," and [ ] "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course."

*Pliler v. Ford*, 542 U.S. 225, 231 (2004) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183–84 (1984)). In this case, Oliver failed to timely review and satisfy the requirements of Rule 4(i). Instead, she directed her energies towards challenging the Court's assessments about the validity of service, invoking inapplicable provisions of the D.C. Code and the Kentucky Civil Rules, while continuing to file repeated motions seeking *ex parte* injunctive relief against the President. *See* [R. 6]; [R. 7]; [R. 9]; [R. 13]; [R. 16]; [R. 17]; [R. 27]; [R. 33]; [R. 35]. A "good cause" extension to effect proper service is therefore not warranted. *Cf. Morrissey v. Mayorkas*, 17 F. 4th 1150, 1156–59 (D.C. Cir. 2021) (holding that a *pro se* party's misreading of Rule 4(i) does not establish "good cause"); *Hooli v. Adm'r Fla./Adventist Hosp.*, No. CV 24-187 (TJK), 2025 WL 471218, at *1–2 (D.D.C. Feb. 12, 2025) (declining to grant Rule 4(m) extension where Court repeatedly advised plaintiff that his efforts to serve process, based upon a misunderstanding of pertinent rules, were invalid).

The Court must also separately consider whether a discretionary extension is warranted without a finding of good cause. *Henderson v. United States*, 517 U.S. 654, 662 (1996). The Sixth

- 17 -

Circuit has directed district courts to consider seven factors when deciding whether such an extension is warranted:

(1) whether an extension of time would be well beyond the timely service of process;

(2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;

(3) whether the defendant had actual notice of the lawsuit;

(4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;

(5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;

(6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

(7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 569 (6th Cir. 2022). Here, the factors pull in both directions. Some considerations favor granting an extension: the 90-day deadline expired approximately 45 days ago (factor one); an extension would not prejudice the defendant (factor two); and Oliver proceeds *pro se* (factor six). Conversely, other considerations weigh against granting an extension: there is no indication that President Trump has actual knowledge that this lawsuit is pending (factor three); and a without-prejudice dismissal of the case would not substantially prejudice the plaintiff (factor four). With respect to factor five, the Court believes that Oliver generally acted in good faith in her service efforts. However, the Court finds that she did not act diligently to correct service deficiencies. Oliver filed her affidavit regarding initial service efforts on April 15, 2025. *See* [R. 14]. The Court advised her that those efforts were insufficient by Order entered May 1, 2025, *see* [R. 15], and again on May 9, 2025, *see* [R. 18].

Oliver did not attempt service again until, at the earliest, July 19, 2025, some 71 days later. *See* [R. 34]. And as noted above, that effort was foundationally deficient in several respects. With respect to factor seven, the Court again notes only that Oliver's failure to serve the defendant had the effect, whether intended or not, of furthering her goal of having her claims considered *ex parte*. On balance, the Court concludes that these factors weigh against granting an extension of time to effect service. *See Thul*, 2023 WL 6470733, at *2–3. In particular, the Court emphasizes that dismissal of this action, without prejudice, will not undermine Oliver's ability to file a new civil action to vindicate the same rights she asserts in the present case.

Accordingly, it is **ORDERED** as follows:

1. Oliver's "Motion to Recuse or Divest," [**R. 31**], is **DENIED.**

2. This action is **DISMISSED**, **without prejudice**, for failure to timely effect service of process in conformity with Rule 4 of the Federal Rules of Civil Procedure.

3. This matter is **STRICKEN** from the docket.

4. All other pending motions are **DENIED** as moot.

This the 21st day of August, 2025.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY